UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MALCOLM K. DICKERSON,     Plaintiff,

v.     Civil Action No. 3:15-cv-P724-DJH

KY CORRECTIONAL PSYCHIATRIC CTR. *et al.*,     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

When Plaintiff Malcolm K. Dickerson initiated this 42 U.S.C. § 1983 action, he was a pretrial detainee incarcerated at Kentucky Correctional Psychiatric Center (KCPC). While there, another inmate assaulted him and broke his jaw. In this lawsuit, Plaintiff claims that the attack occurred because KCPC Defendant Captain Darlene Brown and an unknown Defendant failed to protect him. Before the Court are three motions by Plaintiff for summary judgment (DNs 26, 29, & 41) and a motion for summary judgment by Defendant Brown (DN 48). Fully briefed, these motions are ripe for decision. For the following reasons, Plaintiff's motions for summary judgment will be denied, and Defendant Brown's motion for summary judgment will be granted. The Court will also dismiss Plaintiff's claim against the unknown Defendant.

### I. PROCEDURAL HISTORY

Plaintiff initiated this § 1983 action on September 11, 2015, against Defendants KCPC, Defendant Brown, and an unknown KCPC staff member. On January 21, 2016, this Court conducted an initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and dismissed Plaintiff's claims against KCPC for failure to state a claim upon which relief may be granted. (DN 9). The Court, however, allowed Plaintiff's individual-capacity failure-to-protect claims

against Defendant Brown and the unknown KCPC staff member to proceed for compensatory and punitive damages. (DNs 9 & 10).

## II. FACTS

On August 4, 2015, Plaintiff was admitted to KCPC. He had been sent to KCPC for a court-ordered in-patient evaluation. After Plaintiff completed the admissions process, he was told to wait to be escorted to his living area while another inmate completed the admissions process. Defendant Brown then began to escort both Plaintiff and the other inmate to their assigned shared living area. As they were walking to their living area, the other inmate turned and struck Plaintiff without warning. Defendant Brown then lunged to restrain the other inmate to prevent a further assault on Plaintiff. Several other officers also responded to help fully restrain the aggressive inmate. Plaintiff was taken to receive medical assistance and was ultimately diagnosed with a fractured jaw, which required the surgical implantation of a metal plate and screws.

The evidence in this action includes surveillance video of the KCPC admissions area. This video shows the other inmate, before the assault, sitting in a chair at a desk, unrestrained, as he calmly and cooperatively assists a KCPC officer complete his admissions paperwork for KCPC. As Defendant Brown points out, the inmate is so calm that the video shows an officer giving the inmate nail clippers so that he can clip his nails during the admissions process.

The second surveillance video shows Defendant Brown escorting Plaintiff and the other inmate down a hall. Both inmates are unrestrained. This video then shows the inmate, Plaintiff, and Defendant Brown waiting for a security door to open. At that moment, the other inmate abruptly turns and punches an unsuspecting Plaintiff in the jaw. As soon as the assault occurs,

Defendant Brown lunges to restrain the other inmate and several other officers immediately join her to ensure that the inmate is fully restrained.

After the incident occurred, KCPC conducted an investigation. Based upon the investigation, KCPC officials concluded that the other inmate had assaulted Plaintiff to show KCPC officials that he was mentally ill in the hope that that he would not be returned to jail and that the state charges pending against him would be dropped. The exhibits provided by Defendant Brown reveal that, during the course of the investigation, it was also noted that it was standard practice at KCPC for inmates to be escorted in small groups and to be allowed to freely interact with other inmates in their respective living areas unless a particular inmate was exhibiting hostile or threatening behavior or had been ordered to be placed in restraints or seclusion by a physician.

### III. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

3

475 U.S. 574, 587 (1986). However, where disputed facts are captured on a video whose accuracy is not in question, the Court must take the facts in the light depicted by the video. *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014)). In addition, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard that the Court reviews the facts presented.

### IV. SUMMARY OF MOTIONS

As stated above, Plaintiff has filed three motions for summary judgment and Defendant Brown has filed one motion for summary judgment.

In his first motion for summary judgment, Plaintiff argues that he is entitled to summary judgment because Defendant Brown ordered a violent inmate "in the room with [him]" and this inmate then assaulted Plaintiff and left him with a metal plate in his jaw, permanent nerve damage, and "aching, terrible, pain." Plaintiff argues that the assault could have been avoided if Defendant Brown had simply escorted him to his living area without escorting the other inmate at the same time. In his second motion for summary judgment, Plaintiff reiterates the above, and then states that these facts are confirmed by the statements of Defendant Brown and KCPC Officer Cody Wathen, which were submitted as part of KCPC's investigation of the assault on

Plaintiff. Plaintiff asserts that these statements are evidence of Defendant Brown's negligence and "blatant disregard of his constitutional rights." Finally, in Plaintiff's third motion for summary judgment, Plaintiff states that Defendant Brown and KCPC staff should be held liable because they knew that the inmate who assaulted him was "extremely violent." With this motion, Plaintiff submits a psychiatric evaluation of the other inmate from KCPC, which was apparently completed following the inmate's attack on Plaintiff, and which indicates that the inmate had assaulted a correctional official at Fayette County Jail, and caused this officer serious physical injury, approximately seven weeks before his attack on Plaintiff.

In her motion for summary judgment, Defendant Brown argues that she is entitled to judgment in her favor for three reasons – because Plaintiff has not presented evidence on which a jury could reasonably find for Plaintiff on his failure-to-protect claim against Defendant Brown; because Plaintiff failed to exhaust his administrative remedies; and because Defendant Brown is entitled to qualified immunity.

## V. ANALYSIS

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Although a pretrial detainee's failure-to-protect claim is technically brought under the Due Process Clause of the Fourteenth Amendment, it is analyzed using the standard set forth

under the Eighth Amendment. *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). The Eighth Amendment imposes a duty on corrections officers to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, to maintain an Eighth Amendment claim based on a failure to prevent harm, an inmate must prove both an objective and subjective component. *Id*. With regard to the objective component, the plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective component requires the plaintiff to prove and that the defendant acted with "deliberate indifference" to that risk. *Id.* "Deliberate indifference is a state of mind akin to criminal recklessness: the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (internal quotation marks and citations omitted).

> Indeed, as the Court of Appeals for the Seventh Circuit has explained,
>
> In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough to state a claim of deliberate indifference under the Eighth Amendment. It is also not sufficient to show that the prison guard merely failed to act reasonably.

*Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (internal quotation marks and citations omitted).

Thus, under this standard, Defendant Brown is only liable if Plaintiff can prove that there was a substantial risk of serious harm to him and that Defendant Brown, knew of, and recklessly disregarded, this risk. The Court concludes that Plaintiff's case falls short with regard to both elements.

## A. SUBSTANTIAL RISK OF SERIOUS HARM

The Sixth Circuit extensively considered a prisoner failure-to-protect claim in *Hester v. Morgan*, 52 F. App'x 220 (6th Cir. 2002). In *Hester*, the plaintiff sued a prison warden after he was assaulted and seriously injured by other inmates. The plaintiff was first assaulted in the prison recreation yard by prison inmates carrying screwdrivers as weapons, but the incident ended quickly and without injury when guards approached. Two days later, the plaintiff and two other inmates were attacked by four inmates, including one inmate involved in the first incident, carrying homemade knives. One inmate died as a result of the second attack, while the plaintiff and the other inmate received serious injuries from numerous stab wounds.

In *Hester*, the court first considered whether the plaintiff had provided evidence which showed that he was incarcerated under conditions posing a substantial risk of serious harm. *Id.* at 223. The *Hester* court found that the plaintiff had not presented evidence that, when viewed in the light most favorable to him, "demonstrate[d] that there was a substantial risk of serious harm to inmates generally, or to himself specifically." *Id*. The Court finds likewise in this case. First, Plaintiff has presented no evidence regarding the frequency of inmate-on-inmate violence at KCPC. Indeed, there is no evidence that the risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Id*. (quoting *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 815 (6th Cir. 1996) (citations omitted).

Plaintiff also suggests that the evidence which shows that that the inmate who attacked Plaintiff had previously attacked a jail official at another facility seven weeks earlier demonstrates that this inmate posed a substantial risk of serious harm to the other inmates at KCPC, including Plaintiff himself. (DN 41, 8/4/15 Psychiatric Evaluation of Other Inmate). Although courts agree that the prior history of an assaulting inmate is an important consideration

7

in determining whether a plaintiff has been incarcerated under a substantial risk of serious harm, this Court can find no case which suggests that evidence of one prior attack on another inmate (or a prison official), months earlier and at a different facility, is sufficient to satisfy this element. *See, e.g.*, *Fanning v. Voyles*, No. 2:13-cv-02011-WMA-HGD, 2014 U.S. Dist. LEXIS 164376, at *11 (N.D. Ala. Oct. 9, 2014) (finding no substantial risk of harm to plaintiff existed where assaulting inmate had spat on and kicked another inmate several days prior to his attack on the plaintiff). *But see Sousa v. Anglin*, 481 F. App'x 265, 267 (7th Cir. 2012) (finding that plaintiff had alleged that he was incarcerated under conditions posing a substantial risk of harm where his cellmate weighed 260 pounds, was known as a "barn boss," and had a history of attacks on at least five prior cellmates); *Brown v. Budz*, 398 F.3d. 904, 907-08, 910-11 (7th Cir. 2005) (concluding that white detainee sufficiently pleaded first element of claim for failure to protect by alleging that defendants permitted black detainee with known history of unprovoked assaults against whites to roam unsupervised in day room where he assaulted plaintiff).

Finally, the Court also notes that the *Hester* court further held that the plaintiff failed to show that he had been incarcerated in conditions posing a substantial risk of serious harm to himself, even though he had been attacked two days earlier by one of the same inmates, because the plaintiff testified that that "he did not have any warning he might be in danger from any other inmate and that he did not belong to any group which was being threatened by other inmates." *Id*. at 224. Similarly, here, Plaintiff has indicated that the attack by the other inmate was a "sneek attack" (DN 48-20, Exh. S., 8/7/15 Plaintiff Grievance), that he and the other inmate had not "had words," and that he had never seen the other inmate "before in [his] life" (DN 48-12, Exh. K, 8/5/15 Plaintiff Witness Statement Form). *See also Lane v. Klingler*, 25 F. App'x 781,

8

783 (10th Cir. 2001) (no substantial risk of serious harm where plaintiff did not know his assailant before the attack and had not previously been threatened by him).

Thus, because there is no evidence of a pervasive history of violence among inmates at KCPC, because the evidence shows that the other inmate had only attacked one other individual – a jail official at another facility – approximately seven weeks earlier, and because Plaintiff acknowledges that the attack upon him was a "sneek attack," which occurred with no prior warning or threat, the Court concludes that Plaintiff has not shown that he was incarcerated under conditions posing a substantial risk of serious harm.

### B. DELIBERATE INDIFFERENCE

In addition, even if Plaintiff could demonstrate that he was incarcerated under conditions imposing a substantial risk of harm, he has failed to present evidence which demonstrates that Defendant Brown knew of and disregarded that risk. Courts have generally held that unexpected incidents are insufficient to establish a claim for deliberate indifference. *See, e.g.*, *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y., 2013) ("Courts routinely deny deliberate indifference claims based on surprise attacks.") (citation omitted). In his motions for summary judgment, Plaintiff argues that Defendant Brown violated his constitutional rights because she attempted to escort a known "violent inmate" and Plaintiff to their shared living area at the same time when they could have been escorted separately. He also argues that the assaulting inmate should have been handcuffed and shackled since he was a known "violent inmate." These arguments, however, fail for several reasons. First, Defendant Brown has averred that she did not know that the other inmate had assaulted an officer at another facility approximately seven weeks before he assaulted Plaintiff at KCPC. (DN 48-3, Exh. B, Brown Decl., ¶ 19). Second, inmates at KCPC are only placed in restraints "in an emergency situation,

9

when it can be clinically justified, or when warranted by a patient behavior that threatens the physical safety of the patient, staff, or others." (DN 45-3, Exh. 3, KCPC Seclusion and Restraint Policy). Here, the video surveillance footage shows, and the declarations of both Defendant Brown and the admitting officer Cody Wathen corroborate, that immediately prior to Defendant Brown's attempted escort of the other inmate and Plaintiff to their shared living area, the other inmate was both calm and cooperative during a somewhat lengthy admissions process. (DN 48-13, Exh. L, Video KCPC Admissions Area; DN 48-2, Exh. A, Wathen Decl., ¶¶ 16, 17; DN 48-3, Exh. B, Brown Decl., ¶ 14-17). In addition, there was no order requiring the other inmate to be placed in restraints on August 4, 2015 (DN 48, Exh. B., Brown Decl., ¶¶ 10, 11). Finally, the video surveillance footage shows that as soon as the other inmate assaulted Plaintiff, Defendant Brown lunged toward the other inmate so he could be restrained and prevented from continuing to assault Plaintiff. (DN 48, Exh. M, Video KCPC Hallway). Taken together, these facts show that Defendant Brown acted reasonably. Although the assault on Plaintiff and the injuries he suffered are extremely unfortunate, there is simply no evidence to support Plaintiff's constitutional claim against Defendant Brown. Indeed, as another court has explained, "[a]lthough violence among the prison population is an unfortunate reality, not all violence suffered by an inmate at the hands of other inmates is traceable to constitutionally culpable conduct by prison officials or staff." *Jenkins v. Tenn. Dep't of Corr.*, No. 1:14-0053, 2015 U.S. Dist. LEXIS 54748, at *15 (M.D. Tenn. Apr. 27, 2015) (citing *Wilson v. Yaklich*, 148 F.3d. 596, 600 (6th Cir. 1998); *Woods v. Lecureux*, 110 F.3d. 1215, 1225 (6th Cir. 1997)).

Thus, based upon the above-cited evidence and legal precedent, the Court concludes that that Defendant Brown is entitled to summary judgment as a matter of law. Accordingly, the

Court need not determine whether Plaintiff exhausted his administrative remedies or whether Defendant Brown is entitled to qualified immunity.

## VI. UNKNOWN DEFENDANT

As indicated above, Plaintiff filed this action against Defendant Brown and an unknown KCPC officer. In his second motion for summary judgment, Plaintiff identifies the unknown KCPC officer as Cody Wathen, the individual who admitted both Plaintiff and the other inmate to KCPC on August 4, 2015. (DN 29, Plaintiff's Second Motion for Summary Judgment; DN 48-2, Wathen Decl., ¶ 8).

In the Court's Scheduling Order, Plaintiff was warned that pursuant to Fed. R. Civ. P. 4(m), he had 120 days from the date of entry of the Order to move to amend his complaint to name the unknown Defendant or show good cause for his failure to do so and that his failure to comply could result in the dismissal of the unknown Defendant from the action. (DN 10). The unknown Defendant was never identified by Plaintiff in an amended complaint, and for this reason, has never been served. Therefore, the Court finds that dismissal of the unknown Defendant is warranted under Fed. R. Civ. P. 4(m). However, even if the unknown Defendant had been properly identified and served, the evidence set forth above shows that he would also be entitled to judgment as a matter law regarding Plaintiff's failure-to-protect claim against him.

## VII. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motions for summary judgment (DNs 26, 29, & 41) are **DENIED** and Defendant Brown's motion for summary judgment (DN 48) is **GRANTED**.

Date:  March 22, 2017

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Counsel of Record
4415.011

12